1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13
14
15
16
17
18

JOHN FLORA,

        Petitioner,

   v.

SANDRA CARTER,

        Respondent.

Case No. C06-5020RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**January 5, 2007**

19
20

     This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.

21

## INTRODUCTION AND SUMMARY CONCLUSION

22
23
24
25
26
27

     Petitioner challenges his 2001 Clark County convictions for two counts of burglary in the

first degree and one count of attempted kidnapping in the first degree.  Petitioner was convicted after

a bench trial.  He was given an exceptional sentence above the standard range.  Petitioner was

sentenced to 144 months incarceration.  (Dkt. # 5).  Having reviewed the pleadings and the record

the court concludes one issue in this petition is unexhausted and procedurally barred.  The other

issue is exhausted but without merit.  The petition should be **DISMISSED**.

28

REPORT AND RECOMMENDATION- 1

FACTS

The Washington State Court of Appeals summarized the facts as follows:

Flora became obsessed with Christy Lieser in the mid-70's when the two were involved in a romantic relationship.  Twenty-five years after their relationship ended, Flora broke into Lieser's mother's house twice.  The first time, he forcibly kissed and then proposed marriage to Lieser; she refused his proposal.  The second time, he attempted to kidnap Lieser.

Flora periodically telephoned Lieser's mother, Billee, to chat and speak about Lieser.  These calls grew more frequent during the summer of 2000, and Flora asked how he could locate Lieser.  Billee knew that Lieser did not want Flora to contact her, so Billee did not tell Flora how to reach her.  Then, on the evening of August 27, 2000, Flora broke into Billee's home when Lieser was visiting.

Lieser and her mother were watching television in the living room and Lieser was lying on the couch.  Flora came into the living room, pinned Lieser down by the wrists, and tried to kiss her.  As Flora professed his love for Lieser, she "hollered his name and swore at him."  VII- A Report of Proceedings (RP) at 243.  Lieser's mother pulled Flora off her daughter and calmed him down.  Flora told Lieser that they were meant to be together, presented Lieser with an engagement ring, and asked her to marry him.  Lieser described the discussions as "[a] bunch of nonsense."  VII-B RP at 319.

Billee finally convinced Flora to leave by promising not to call the police.  Lieser's wrists were badly bruised from Flora pinning her down.  She wanted to phone the police, but her mother convinced her not to.

About a week later, on September 2, 2000, Lieser again spent the night at her mother's home.  She was sleeping at 1:30 that morning when Flora broke into the home again.  Lieser awoke to Flora's hand over her mouth, whispering "we were leaving."  VII-B RP at 324. She screamed and fought.  When Flora tried to drag her to the door, she hit him repeatedly with her closed fists.  More than once in their struggle the two fell on furniture.

Billee awoke to her daughter's screams.  She ran to Lieser's bedroom and found Flora trying to pick Lieser up while Lieser kicked and hit him with her fists.  Billee went back to her bedroom to get her gun, but had trouble loading it.  After struggling with loading the weapon for about four minutes, Billee returned to the bedroom where Lieser and Flora were still fighting and shot the wall to get Flora's attention.  Lieser got away from Flora and ran to her mother's bedroom.  Billee told Flora to leave or she would kill him.  Flora left, and Billee called the police.

When the police arrived they noticed that the sliding glass door had been lifted off its track, which could be done even when the door was locked.  Lieser discovered a backpack packed with her clothing on the floor of her bedroom.  Lieser had not packed the backpack.  Lieser had many bruises on her back and two broken knuckles from her struggle with Flora.

Police arrested Flora several days after the second break-in.  The State charged him with two counts of first degree burglary (counts I and IV), one count of first degree attempted kidnapping, (count II), and one count of indecent liberties

REPORT AND RECOMMENDATION- 2

(count III).  The court sent Flora to Western State Hospital for evaluation of his competency to stand trial. According to the resulting Mental Health Information Report and Transfer, Flora suffers from delusional disorder of the "erotomanic type," which means that he is wrongly, but firmly, convinced that Lieser is in love with him. Following a hearing, the trial court found Flora competent to stand trial.  Trial was to the court, which found Flora guilty of two counts of first degree burglary and one count of first degree attempted kidnapping, but it acquitted him on the indecent liberties charge.  The court imposed a 144-month exceptional sentence.  Flora appeals his convictions only.

At trial, both Lieser and her mother testified that Flora did not have permission to enter the house on either occasion.  Flora himself admitted that he had no oral or written permission to enter.  His defense at trial was that he believed that he had permission from Lieser to break in and take her away by, what he calls, "implied" consent.  He attempted to prove that she actually wanted Flora to take her away that night.  He thus denied that he lacked permission for his actions on August 27 and September 2 but admitted every other element of the burglary and kidnapping charges.

(Dkt. # 18, Exhibit 3, pages 2 to 4). (footnotes omitted).

<u>PROCEDURAL HISTORY</u>

Petitioner appealed his conviction and on appeal raised the following issues:

1.  Trial court abused its discretion by not allowing extensive examination into events 15 - 22 years before.

2.  Trial court denied defense right to prove critical elements of his defense by denying handwriting analysis of witness document.

3.  Trial court denied defendant fundamental fairness and substantial justice by denying defendant ability to mount adequate defense through neglect, curable ignorance and/or prejudice and bias toward defendant's cause.

    a.  Due process insures defendant the right to present evidence in his behalf before an impartial trier of fact.

    b.  due process insures defendant the right to have his theory of defense heard by an impartial trier of fact.

4.  State did not satisfy burden of proving defendant guilty beyond a reasonable doubt because they did not prove beyond a reasonable doubt his theory of defense was wrong.

5.  It was prosecutorial misconduct for state to not fully disclose evidence of leading witness' psychiatric records when there was question about her competence.

    a.  It is Prosecutor's obligation to disclose records of mental examinations of witness if there becomes question of competency.

REPORT AND RECOMMENDATION- 3

1

        b.      There was misconduct for State to wait until day of trial to notify defendant of evidence witness may be incompetent when it was aware a month prior.

2

3

    6.      Trial court abused its discretion by admitting testimony of witness where there was question of her competence, without first determining competency.

4

5

    7.      Trial court erred in finding defendant guilty of count IV, burglary in the first degree, because all elements of the crime were not proven beyond a reasonable doubt as due process clause of the 14th Amendment requires.

6

7

8

    8.      Trial court violated double jeopardy of U. S. Constitution finding defendant guilty of both count I, burglary in the first degree and count II, attempted kidnapping in the first degree.

9

10

        a.      The "Assault" element in the first degree burglary cannot be equated to the "Abduct" element in the first degree attempte [sic] kidnapping.

11

12

        b.      To convict a person of two separate offenses for the same conduct is double jeopardy.

13

    9.      Trial court erred convicting defendant of attempted kidnapping in the first degree because intended felony was a past event.

14

15

(Dkt. # 18, Exhibit 4).  The Washington State Court of Appeals affirmed the convictions on April 9, 2003.

16

17

        Petitioner filed a motion for discretionary review and argued:

18

    1.      Appellate court erred by finding no reversible error by trial court for limiting examination into events 15-22 years before to show bias towards defendant.

19

20

    2.      Appellate court erred by finding no reversible error by trial court for refusal to appoint handwriting expert.

21

    3.      Appellate court erred by finding prosecution proved intent element of first degree attempted kidnapping.

22

23

        a.      State should have been required to prove all elements of crime for conviction to stand.

24

        b.      Appellate court should have assigned error to trial court for ruling the intent element was a past event.

25

26

        c.      Appellate court should not have equated romantic interest with sexual motivation to prove intent element was rape.

27

28

REPORT AND RECOMMENDATION- 4

(Dkt. # 18, Exhibit 6).  Review was denied without comment on January 4, 2005 (Dkt # 18, Exhibit 7).

One year and five days later, on January 9, 2006, petitioner filed his petition (Dkt. # 5).  In the petition Mr. Flora states the Washington State Supreme Court denied review on January 14, 2005 (Dkt. # 5, page 2).  Respondent does not argue the petition is time barred.  The court will not consider the time bar issue.  Respondent notes the Mandate from the Washington Court of Appeals was entered January 14, 2005 (Dkt., # 17, page 5).  Petitioner raises the following issues in his federal petition:

    1.    State of Washington erred in convicting petitioner (Flora) of Attempted kidnapping in the 1st degree for [it] did not prove all elements.

        a.    To find a person guilty of attempted kidnapping in the 1st degree the State must prove the person took steps attempting to abduct a person with intent to facilitate the commission of any felony or flight.

        b.    If this intent is not proven then the person is guilty of Attempted kidnapping in the 2nd degree.

        c.    The state showed no evidence of Defendant's intent for the abduction.

(Dkt. # 5, page 5).

Petitioner later moved to amend his petition and add the argument that the court erred by departing from the standard range in sentencing (Dkt. # 14).  The court allowed the amendment and directed respondent to address this issue (Dkt. # 16).  Respondent argues the petition is unexhausted and procedurally barred (Dkt. # 17).

<u>EVIDENTIARY HEARING</u>

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish

REPORT AND RECOMMENDATION- 5

1    by clear and convincing evidence that but for constitutional error, no reasonable fact finder would

2    have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996).

3    Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not set forth

4    any factual basis for his claims that could not have been previously discovered by due diligence.

5    Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder

6    would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary

7    hearing.

8                                              STANDARD

9          Federal courts may intervene in the state judicial process only to correct wrongs of a

10   constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 is explicit in that a

11   federal court may entertain an application for writ of habeas corpus "only on the ground that [the

12   petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28

13   U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief

14   does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S.

15   37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

16         Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated

17   on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was

18   contrary to, or involved an unreasonable application of, clearly established federal law, as determined

19   by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination

20   of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d).  A

21   determination of a factual issue by a state court shall be presumed correct, and the applicant has the

22   burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

23   §2254(e)(1).

24                                             DISCUSSION

25         A.      Exhaustion.

26         In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly

27   presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v.

28   REPORT AND RECOMMENDATION- 6

1    Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  A federal habeas petitioner must provide the state

2    courts with a fair opportunity to correct alleged violations of prisoners' federal rights.  Duncan v.

3    Henry, 513 U.S. 364 (1995).  It is not enough that all the facts necessary to support the federal claim

4    were before the state courts or that a somewhat similar state law claim was made.  Id, *citing* Picard

5    v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982).

6         Petitioners' sentencing issue was never presented to the Washington State Court of Appeals.

7    The Washington State Court of Appeals specifically stated "[t]he court imposed a 144-month

8    exceptional sentence.  Flora appeals his convictions only." (Dkt. # 18, Exhibit 4, page 4).  Thus, no

9    sentencing issue was placed before the Washington State Court of Appeals.  Review of the motion

10   for discretionary review, shows Mr. Flora raised no issues regarding the length of his sentence in his

11   motion to the Washington State Supreme Court (Dkt. # 18, Exhibit 6).  This issue is unexhausted.

12   Further, petitioner is precluded form returning to state court for a collateral challenge as it has been

13   more than one year since his criminal conviction became final.  See, RCW 10.73.090.

14        The court finds the other issue in this case, which deals with intent and sufficiency of the

15   evidence, was presented to the Washington State Court of Appeals and the Washington State

16   Supreme Court in the motion for direct appeal and motion for discretionary review (Dkt. # 18,

17   Exhibits 4 and 6).

18        B.    Procedural Bar.

19        Normally, a federal court faced with an unexhausted or mixed petition dismisses the petition

20   without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court.

21   Here, however, petitioner is barred from filing another petition in state court as any attempt to file

22   another petition will be deemed time barred.  See, RCW10.73.090.

23        Federal Courts generally honor state procedural bars unless it would result in a "fundamental

24   miscarriage of justice" or, petitioner demonstrates cause and prejudice.  Coleman v. Thompson, 501

25   U.S. 722, 750 (1991).  Petitioner here cannot show cause and prejudice.  He simply did not submit

26   his sentencing issue on direct appeal and has not filed a collateral challenge.

27        To show cause in federal court, petitioner must show that some objective factor external to

28   REPORT AND RECOMMENDATION- 7

1  the defense prevented petitioner from complying with state procedural rules relating to the

2  presentation of his claims. <u>McCleskey v. Want</u>, 499 U.S. 467, 493-94 (1991). Here, petitioner simply

3  failed to raise his sentencing issue on direct appeal.  Thus, petitioner cannot show cause that excuses

4  his procedural default in state court.  Accordingly, the second claim regarding sentencing, is

5  **PROCEDURALLY DEFAULTED AND SHOULD NOT BE CONSIDERED.**

6       C.    <u>On the merits</u>.

7       Respondent argues petitioners' claim regarding sufficiency of the evidence is also

8  unexhausted and procedurally barred.  The court disagrees.  On direct appeal petitioner argued:

9       8.    Trial court violated double jeopardy of U. S. Constitution finding
   defendant guilty of both count I, burglary in the first degree and count

10           II, attempted kidnapping in the first degree.

11          a.    The "Assault" element in the first degree burglary
   cannot be equated to the "abduct" element in the first

12              degree attempte [sic] kidnapping.

13          b.    To convict a person of two separate offenses for the
   same conduct is double jeopardy.

14

15      9.    Trial court erred convicting defendant of attempted kidnapping in the
   first degree because intended felony was a past event.

16      Thus, Mr. Flora placed the court on notice he was raising a federal claim and challenging the

17 evidence used to convict him of an element of the burglary charge, "assault", and an element of the

18 kidnapping charge intent to "abduct."  Confusion arises, because the statute defining the crime of

19 first degree kidnapping mentions the word intent in two places. The statue states:

20      A person is guilty of first degree kidnapping in Washington if he **intentionally
   abducts** another with **the intent**:

21      a.    to hold him of ransom or reward, or as a shield or hostage: or
        b.    to facilitate commission of any felony or flight thereafter; or

22      c.    to inflict bodily injury on him; or
        d.    to inflict extreme mental distress on him or a third person; or

23      e.    to interfere with the performance of any governmental function.

24 RCW 9A.40.020. (Emphasis added).

25      The Washington Court of Appeals considered the issue on the merits in the context of double

26 jeopardy and sufficiency of the evidence.  The court held:

27      Flora argues that the same evidence outlined in the facts statement above

28 REPORT AND RECOMMENDATION- 8

supports the "assault" element of his first degree Burglary conviction (in count 1, September 2) and the "abduct" element of his attempted first degree kidnapping conviction because the trial court said in its ruling "[y]ou keep talking about it wasn't your intent to assault her.  But you were inside the house.  You were wrestling with her to get her outside the house.  Certainly there had to be some form of intent to remove her."  VIII-B RP at 653.  Our State's anti-merger statute resolves this issue.  "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." RCW 9A.52.050

The double jeopardy clause of the Fifth Amendment of the federal constitution and article I, section 9 of the Washington constitution prohibit multiple punishments for the same offense.  Double jeopardy applies if the multiple punishments cannot survive the "same elements" test, commonly known as the *Blockberger* test, which examines whether each offense contains an element not included in the other.  *State v. Sweet*, 91 Wn. App. 612, 617, 959 P.2d 677 (1998) (citing *Blockberger v United States*, 284 U. S. 299, 304, 52 S.Ct. 180, 76 L.Ed 306 (1932), and *State v. Gocken*, 127 Wn.2d 95, 101, 896 P.2d 1267 (1995)), *aff'd,* 138 Wn.2d 466 (1999).

Applying *Blockberger*, each offense has an element the other does not:  Kidnapping has the "abduct" element and first degree burglary has the "assault" element.  Flora appears to acknowledge that under this test, the two crimes are not constitutionally the same, but he argues that the same physical contact supported both in this case.  While it is true that Flora may not have intended two separate crimes on September 2, Flora's subjective intention is not the applicable standard for our review.  Moreover, separate acts support both the assault element of burglary and the attempted abduction element of kidnapping.  Flora assaulted Lieser when he placed his hand over her mouth as he woke her up, attempted to kiss her, and restrained her when she struggled against him.  He attempted to abduct her when he dragged her across the bedroom.

## INTENT TO COMMIT BURGLARY FOR KIDNAPPING CHARGE

Finally, Flora claims that, because the State alleged that Flora abducted Lieser with the intent to facilitate commission of any felony or flight thereafter "to-wit Burglary in the first degree and/or Rape in the First Degree," the State had to prove his "intent to facilitate the commission of a felony or flight."  BR. of Appellant at 47-48.  Flora claims the State failed to prove this because he had already committed the burglary.

Flora's argument ignores the language "or flight thereafter." RCW 9A.40.20(b).  The State was required to prove that Flora attempted to abduct Lieser with the intent to facilitate burglary or rape or to facilitate flight after the burglary.

Other than the charge of indecent liberties for Flora's alleged fondling of the victim's breasts during the struggle (of which the trial court acquitted him), there was no mention of any intent to rape Lieser after her abduction.  But, the evidence firmly established that Flora has a romantic interest in Lieser that he refuses to acknowledge is not mutual.  The State played a video tape that shows Flora speaking to his unborn children, whose mother is, of course, Lieser.  In that video-found in Flora's car when he was arrested and apparently made just before the September 2 events- Flora explains to the unborn children that he is going to get their mother, and will kidnap her if she does not come with him willingly.  This certainly implies that Flora

REPORT AND RECOMMENDATION- 9

1
2
3
4
5
6

intended, at least at some point, to conceive children with Lieser.  Taking the evidence in the light most favorable to the State, Flora had romantic designs on Lieser, who believes he is capable of violence and "terrible things" RP at 617.  The evidence supports the charge of attempted abduction with intent to commit first degree rape as Flora repeatedly demonstrated that he is either incapable of or unwilling to acknowledge that Lieser does not love him.  Moreover, Flora forced his sexual intentions on Lieser each time he broke into her mother's home.  The evidence is sufficient as a matter of law to support the trial court's verdict that Flora was guilty of two counts of first degree burglary and one count of first degree attempted kidnapping.  We affirm.

(Dkt. # 18, Exhibit 4, pages 13 to 15)(footnote omitted).

7
8
9

In his motion for discretionary review petitioner argued:

3.      Appellate court erred by finding prosecution proved intent element of first degree attempted kidnapping.

10
11
12

a.      State should have been required to prove all elements of crime for conviction to stand.

b.      Appellate court should have assigned error to trial court for ruling the intent element was a past event.

13
14

c.      Appellate court should not have equated romantic interest with sexual motivation to prove intent element was rape.

15

(Dkt. # 18, Exhibit 6).  Thus, in both the direct appeal and in the motion for discretionary review

16

petitioner challenges the intent to abduct element of his kidnapping conviction. In his federal habeas

17

petition Mr. Flora argues:

18
19

1.      State of Washington erred in convicting petitioner (Flora) of Attempted kidnapping in the 1st degree for [it] did not prove all elements.

20
21

a.      To find a person guilty of attempted kidnapping in the 1st degree the State must prove the person took steps attempting to abduct a person with intent to facilitate the commission of any felony or flight.

22
23

b.      If this intent is not proven then the person is guilty of Attempted kidnapping in the 2nd degree.

24
25

c.      The state showed no evidence of Defendant's intent for the abduction.

26

(Dkt. # 5, page 5).  Mr. Flora is arguing the state did not prove intent to abduct and that the State

27

did not prove the kidnapping was in furtherance of any felony or in flight thereafter.  The court

28

REPORT AND RECOMMENDATION- 10

1 | considers these two issues exhausted.

2 | In this case, the purpose of the burglary was to facilitate the kidnapping of Lieser. The video

3 | tape played at trial discloses petitioner actually stating he is going to get Lieser and will kidnap her if

4 | she does not come willingly.  (Dkt. # 18, Exhibit 4, page 14). This evidence shows intent to abduct

5 | for the purpose of kidnapping.  Further, it cannot be seriously disputed that petitioner was in the

6 | process of conducting a burglary in the first degree as part of his plan to kidnap Lieser.  He was in

7 | the home without permission, he assaulted his intended victim and fought with her for a number of

8 | minutes.  Mr. Flora was attempting to take Lieser and the items he had taken from the home, her

9 | clothes.  Thus, the kidnapping facilitated the burglary, in fact, the kidnapping was the reason for the

10 | burglary on September 2, 2000.

11 | To obtain habeas relief petitioner must show the state court decision resulted in a decision

12 | that was contrary to, or involved an unreasonable application of, clearly established federal law, as

13 | determined by the Supreme Court.  Mr. Flora has failed to meet that burden.  In the alternative Mr.

14 | Flora would need to show the state court decision resulted in a decision that was based on an

15 | unreasonable determination of the facts in light of the evidence presented to the state courts.

16 | The evidence in the record before the court is overwhelming.  The video alone proves intent

17 | to kidnap.  The facts surrounding Mr. Flora's presence in the home, and his assault on Lieser on

18 | September 2, 2000, while he was burglarizing the home, support the convictions for counts 1 and 2.

19 | Petitioner does not appear to contest his conviction for First degree burglary stemming from the

20 | August 27, 2000 incident in this petition.  This petition is without merit and should be **DISMISSED.**

21 |

22 | <u>CONCLUSION</u>

23 | The only exhausted issue in the petition is without merit.  The other issue is procedurally

24 | barred and was not presented as a federal claim.  Accordingly, the petition should be **DISMISSED**

25 | **WITH PREJUDICE.**  A proposed order accompanies this report and recommendation.

26 | Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

27 | parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.

28 | REPORT AND RECOMMENDATION- 11

1   R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

2   appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

3   72(b), the clerk is directed to set the matter for consideration on **January 5, 2007** as noted in the

4   caption.

5         Dated this 13 day of December, 2006.

6                                    */S/ J. Kelley Arnold*
                                     J. Kelley Arnold
7                                    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   REPORT AND RECOMMENDATION- 12